IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

MCPHEE ELECTRIC LTD., LLC,

    Plaintiff,

    v.                        CIVIL NO.: WDQ-10-0831

SIGNAL PERFECTION LTD.,

    Defendant.

MEMORANDUM OPINION

McPhee Electric Ltd., LLC ("McPhee") sued Signal Perfection Ltd. ("SPL") for breach of contract. Pending is SPL's motion to dismiss or, in the alternative, stay the case pending arbitration. For the following reasons, SPL's motion to dismiss will be granted.

I.    Background[1]

This dispute involves the construction of the Gaylord National Resort & Convention Center (the "Project") in Oxen

---

[1] For the pending motions, Drewry's well-pleaded allegations are accepted as true. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

1

Hill, Maryland, a project overseen by Gaylord National, LLC. *See* Compl. ¶ 5. McPhee is a Connecticut LLC "in the business of electrical contracting and subcontracting." *Id*. ¶ 1. SPL is a Maryland LLC "in the business of audio-visual contracting and subcontracting." *Id*. ¶ 2.

On October 20, 2006, McPhee and SPL entered into a subcontract under which SPL agreed to perform audio-visual work for the Project. *Id*. ¶ 7; Ex. 1 [hereinafter "Subcontract"].[2] On April 9, 2007, SPL entered into a "third-tier subcontract" with Tech, Inc. under which Tech agreed to perform audio-visual cable installation work for the Project. *Id*. ¶ 9; Ex. 2 [hereinafter "TT Subcontract"]. Tech performed the agreed-upon work, but SPL has not paid Tech the amount due under the TT Contract. *Id*. ¶¶ 14-16.

The TT Subcontract contains an arbitration clause, under which "[a]ny claim arising out of or related to [the agreement] except claims as otherwise provided in Section 4.1.5 and except those waived in [the agreement] shall be subject to arbitration." TT Subcontract, § 6.2.[3] The TT Subcontract also incorporates "AIA Document A201: General Conditions of the

---

[2] McPhee notes that it owes SPL $201,651 under the Subcontract. *Id*. ¶ 8.

[3] Neither party contends that the claims in this suit are affected by § 4.1.5 of--or were waived in--the TT Subcontract.

Contract for Construction, *see id*. §§ 1.2, 2.1.[4]  Under § 13.2.1 of that agreement, SPL and Tech "respectively bind themselves, their partners, successors, assigns and legal representatives to

---

[4] Under § 1.2, "Except to the extent of a conflict with a specific term or condition contained in the Subcontract Documents, the General Conditions governing this Subcontract shall be edition of AIA Document A201, General Terms of the Contract for Construction[.]"

Under § 2.1:

> The Contractor and Subcontractor shall be mutually bound by the terms of [the TT Subcontract] and, to the extent that the provisions of AIA Document A201 . . . apply to this [TT Subcontract] pursuant to § 1.2 and provisions of the Prime Contract, between the General Contractor (i.e., McPhee) and Contractor, apply to the Work of the Subcontractor, the Contractor shall assume toward the subcontractor all obligations and responsibilities that the Owner (*i.e.*, Gaylord National, LLC), under such documents, assumes toward the Contractor all obligations and responsibilities which the Contractor, under such documents assumes toward the Owner and the Architect.  The Contractor shall have the benefit of all rights, remedies and redress against the Subcontractor which the Owner, under such documents, has against the Contractor, and the Subcontractor shall have the benefit of all rights, remedies and redress against the Contractor which the Contractor, under such documents, has against the Owner, insofar as applicable to this Subcontract.

"Contractor" has two different meanings.  In the TT Subcontract, "Contractor" generally refers to SPL.  This section, in referring to AIA Document 201, also uses "Con-tractor" as it is defined in that document, which describes the relationship between "Owner" and "Contractor."  Although it does so in a confusing fashion, § 2.1 of the TT Subcontract merely states that SPL and Tech have the same rights, remedies, and redress that "Owner" and "Contractor" have against each other under AIA Document 201.

the other party hereto . . . in respect to covenants, agreements and obligations contained in the Contract Documents." Opp., Ex. B [hereinafter "Document A201"].[5]

Effective December 23, 2009, McPhee and Tech entered into a Final Settlement and Release Agreement under which Tech assigned to McPhee its right to payment under the TT Subcontract with SPL. *Id.* ¶ 17.

On April 5, 2010, McPhee sued SPL for breach of contract. Paper No. 1. The allegations are: (1) Tech and SPL entered into the TT Subcontract, (2) Tech performed its obligations under it, (3) SPL breached by failing to pay Tech, (4) Tech assigned its rights against SPL to McPhee. Compl. ¶¶ 18-23. McPhee claims that as the assignee of Tech, SPL owes it the amount allegedly due under the TT Subcontract: $580,433. *Id.* ¶ 22. McPhee concedes that it owes SPL $201,651 dollars under its Subcontract; thus, its demand is $378,782. *Id.* ¶ 24.

On May 13, 2010, SPL moved to dismiss or, in the alternative, stay the case pending arbitration. Paper No. 5.

---

[5] Although Document A201 was not referenced in or attached to the Complaint, the Court may consider it "so long as [it is] integral to the complaint and authentic." *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Document A201 is integral to the Complaint because it is incorporated into the Subcontract on which McPhee bases its claims, and its authenticity has not been challenged.

4

II. Analysis

    A. Standard of Review

Under the Federal Arbitration Act ("FAA"), "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.[6] When a court determines that an issue in a judicial proceeding is subject to arbitration, the court "shall"--upon motion by one of the parties--stay the proceeding until that issue is arbitrated. *See* 9 U.S.C. § 3. When all the issues presented in a lawsuit are arbitrable, "dismissal is a proper remedy." *Choice Hotels Int'l Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-710 (4th Cir. 2001).

---

[6] The FAA applies only to transactions involving interstate commerce. *See American Home Assurance Co. v. Vecco Concrete Constr. Co.*, 629 F.2d 961, 963-64 (4th Cir. 1980) (interstate commerce requirement satisfied when parties to contract had principal places of business in different states and performance involved the transportation of materials and workers in interstate commerce). Parties may implicitly acknowledge that the transaction involved interstate commerce by invoking diversity jurisdiction. *See Sekisui TA Indus. LLC v. Quality Tape Supply, Inc.*, 2009 U.S. Dist. LEXIS 61983 (D. Md. July 17, 2009). Because subject matter jurisdiction in this breach of contract case is based on diversity, the FAA applies. *Id*.

B. SPL's Motion to Dismiss

SPL contends that the case must be dismissed because the TT Subcontract, under which McPhee asserts its rights as Tech's assignee, requires arbitration of "[a]ny claim arising out of or related to [TT Subcontract]."[7] TT Subcontract § 6.2. Because under § 13.2.1 of AIA Document A201--which the TT Subcontract incorporates--SPL and Tech "respectively bind themselves, their partners, successors, *assigns* and legal representatives to the other party hereto . . . in respect to covenants, agreements and obligations contained in the Contract Documents," (emphasis added), SPL argues that McPhee's claims are subject to arbitration.

On a motion to dismiss based on the FAA, the Court "engages in a limited review to ensure that the dispute is arbitrable--i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement.'" *Hooters of America, Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999). In doing so, the Court applies state law principles of contract interpretation. *See First Operations of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

---

[7] As noted above, this clause contains exceptions that are inapplicable to this case.

Under Maryland law, "[w]he[n] the language of the arbitration clause is clear, and it is plain that the dispute sought to be arbitrated falls within the scope of the . . . clause, arbitration should be compelled." *Gold Coast Mall, Inc. v. Larmer Corp.*, 298 Md. 96, 468 A.2d 91, 95 (Md. 1983). "Whe[n] there is a broad arbitration clause, calling for the arbitration of any and all disputes *arising out of* the contract, all issues are arbitrable unless expressly and specifically excluded." *Id*. (emphasis added).

The Maryland Court of Appeals has held that a clause requiring arbitration of disputes "arising out of or relating to" a contract has expansive reach. *See, e.g., Crown Oil & Wax Co. of Del., Inc. v. Glen Constr. Co. of Va., Inc.*, 320 Md. 546, 578 A.2d 1184, 1189 (Md. 1990). The Supreme Court and the Fourth Circuit have reached the same conclusion. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967); *American Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir. 1996). McPhee's claims that SPL breached the TT Subcontract by failing to pay Tech for its work is within the broad arbitration clause.

McPhee does not dispute SPL's arguments that (1) the TT Subcontract contains a valid arbitration clause or (2) that Document 201 makes the provisions of the TT Subcontract binding

7

on it as Tech's assignee.  Instead, it argues that the Subcontract *between McPhee and SPL* determines whether the parties must submit to arbitration.  That agreement also contains an arbitration clause, but the clause may only be triggered by the "Contractor" (*i.e.*, McPhee).[8]  McPhee maintains that the Subcontract between it and SPL is controlling because this case involves McPhee's "set-off rights" under the Subcontract.

This argument is based on Article 5.1.3 of the Subcontract, which gives McPhee the right to "pay any material invoices generated by this Subcontract and by Sub-Subcontractors or suppliers . . . and to correspondingly reduce the Contract amount due [to SPL] by the same amount."[9]  McPhee contends that because the right to "set off under the [Subcontract] is the

---

[8] Article 13.2 of the Subcontract states that "[a]ll disputes between the Contractor and the Subcontractor not falling within Article 13.1, at the option of [McPhee], shall be resolved by binding arbitration[.]"

[9] McPhee also cites Article 5.1.2, which, it contends, provides additional "set-off" rights:

> Before paying any amount due to [SPL] as provided herein above, [McPhee] is hereby authorized to deduct from and offset an amount equal to any and all sums or obligations owed by [SPL] to [McPhee], and any and all claims . . . by [McPhee] against [SPL], arising hereunder, under any Contract or agreement between [SPL] and [McPhee] or from any other liability or obligation of [SPL] to [McPhee] or otherwise.

heart of this dispute," and that right is governed by the Subcontract, McPhee may pursue its claims in this Court.

The right to set-off is not at "the heart of this dispute." Although McPhee's complaint concedes that it owes SPL $201,651 dollars under its Subcontract, this does not raise the issue of set-off. Set-off is not a "claim" asserted by the plaintiff, but a "counterclaim arising from an independent claim *that the defendant has against the plaintiff*." *FDIC v. Marine Midland Realty Credit Corp.*, 17 F.3d 715, 722 (4th Cir. Va. 1994) (emphasis added). The only claims raised in McPhee's complaint--for breach of the TT Subcontract--are subject to arbitration. Defendant SPL has not raised a counterclaim for set-off.

All the issues in this case are arbitrable. Accordingly, SPL's motion to dismiss will be granted.


August 16, 2010           _____/s/_____
Date                      William D. Quarles, Jr.
                          United States District Judge